IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 1:21-CR-71 |
| v. | : (Judge Conner) |
| DELANCEY MELVIN, | : |
| Defendant | : |

## MEMORANDUM

Defendant Delancey Melvin moves the court to suppress evidence obtained during the August 6, 2020 search of 14661 Sherwood Drive. For the following reasons, we will deny the motion.

**I.    Factual Background**[1]

On August 6, 2020, Pennsylvania State Trooper Jared Fluck applied to a magisterial district judge in Franklin County, Pennsylvania, for a warrant authorizing law enforcement to search a residence at 14661 Sherwood Drive in Greencastle, Pennsylvania. (See Doc. 38-3 at 1). The warrant application names Melvin as the owner, occupant, or possessor of the premises and identifies a list of drug-trafficking related items sought by law enforcement. (See id.) Supporting the warrant application was an affidavit of probable cause authored by Trooper Fluck. (See id. at 3-4). After describing his law enforcement credentials, Trooper Fluck states his belief that 14661 Sherwood Drive is the site of a drug-trafficking operation

---

[1] The following factual narrative derives from the agreed-upon facts articulated in Melvin's motion to suppress and the government's opposition, (see Doc. 38 at 1-4; Doc. 40 at 1-2), as well as the application for a search warrant and attached affidavit of probable cause submitted by Melvin, (see Doc. 38-3).

and identifies Melvin as one of the address's residents. (See id. at 3). Trooper Fluck then reports being contacted by "Homeland Security Investigations" regarding an ongoing drug-trafficking operation and documents a series of factual statements related to Melvin purportedly provided by Maryland State Trooper James Ward.[2] (See id. at 4). Some of these statements appear to derive from Trooper Ward's own knowledge while others are attributed to an unnamed "creditable [sic] and reliable" informant. (See id.)

The informant describes Melvin as travelling between New York and Greencastle with a large amount of cocaine contained in a "brick" wrapped with black tape. (See id.) The informant claims to have travelled with Melvin to the Greencastle area and been shown a "brick" by Melvin who explained to the informant that he paid $43,000 for the "brick" and intends to sell the "brick" to "payoff prior debits [sic]." (See id.) According to the informant, Melvin stored the "brick" in the kitchen of the informant's residence. (See id.) Trooper Ward adds from his own personal knowledge that Melvin resides in New York City but visits the Greencastle area approximately once a month and is a known supplier of cocaine in the Hagerstown, Maryland, area. (See id.)

The magisterial district judge granted the warrant on August 6, 2020, and officers promptly executed the warrant the same day. (See id. at 1; Doc. 38 ¶ 5; Doc. 40 ¶ 5). Law enforcement recovered 158.07 grams of cocaine base and 78.23 grams

---

[2] The relationship between Trooper Ward and the aforementioned "Homeland Security Investigations" is unclear from the face of the affidavit.

of cocaine from 14661 Sherwood Drive and arrested Melvin.  (See Doc. 38 ¶ 5; Doc. 40 ¶ 5).  After his arrest, Melvin admitted to law enforcement that the drugs and related paraphernalia belonged to him and that the residence belonged to his girlfriend.  (See Doc. 38 ¶ 6).

## II.    Procedural History

Melvin was indicted on drug charges arising out of the August 6, 2020 search of 14661 Sherwood Drive.  Melvin filed a motion to suppress the evidence obtained during the search, arguing the warrant violated his Fourth Amendment rights.  The motion is now fully briefed and ripe for disposition.

## III.   Discussion

The Fourth Amendment requires searches and seizures to be reasonable, and all warrants to be supported by probable cause.  See U.S. CONST. amend. IV; Horton v. California, 496 U.S. 128, 133 (1990).  When searching a home, the constitutional default is that a warrant is required.[3]  See Payton v. New York, 445 U.S. 573, 586 & n.25 (1980) (citations omitted).  To issue a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband

---

[3] The government's opposition to Melvin's motion does not contest 14661 Sherwood Drive was Melvin's "home."  (See Doc. 40-1 at 3-4 ("[T]he only inquiry for this Honorable Court to make is whether the four corners of the search warrant established probable cause or whether it was executed in good faith.")).  Therefore, we find the government has waived any argument regarding whether Melvin has standing to challenge the warrant.  See United States v. Golson, 743 F.3d 44, 55 n.9 (3d Cir. 2014).

or evidence of a crime will be found in a particular place." United States v. Stearn, 597 F.3d 540, 559 (3d Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Courts reviewing these determinations do not make a *de novo* probable cause assessment; they "simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011) (alteration in original) (quoting Gates, 462 U.S. at 238-39).

The Supreme Court of the United States views probable cause as an amorphous concept, "not readily, or even usefully, reduced to a neat set of legal rules." See Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (quoting Gates, 462 U.S. at 232). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. See United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981). Whether probable cause exists is an objective determination based on the totality of the circumstances present at the time of the challenged governmental conduct. See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

The probable-cause inquiry also considers whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. If the affidavit fails to establish a nexus between the crime alleged and the place to be searched, the Fourth Amendment precludes the search. See Stearn, 597 F.3d at 558. The nexus inquiry is a "common-sense" assessment based on all facts averred in the affidavit, and no particular factor is controlling. See id. at 554 (quoting Gates, 462 U.S. at 238). The magistrate may

4

make "normal inferences about where a criminal might hide [evidence or contraband]." Id. at 554 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).  In the context of drug distribution, "it is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences." Id. at 558; United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002) (same).

Melvin contends the affidavit underlying the warrant failed to establish probable cause for two reasons: (1) the affidavit fails to sufficiently link Melvin and 14661 Sherwood Avenue to drug distribution, (see Doc. 39 at 5-10); and (2) the confidential informant on whom Trooper Fluck relied lacked sufficient credibility, (see id. at 10-11).

### A.   Nexus

The core supposition of Trooper Fluck's affidavit is that Melvin is a drug dealer.  Suspicion that an individual is a drug dealer does not mean that any warrant seeking to search their residence automatically possesses probable cause. See Stearn, 597 F.3d at 559; Burton, 288 F.3d at 104.  *Per contra*, probable cause that a drug dealer is storing evidence of drug-related crimes in their residence arises when there is evidence in the affidavit of probable cause supporting three premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." See Burton, 288 F.3d at 104.

Trooper Fluck's affidavit relies upon information received from Maryland State Trooper James Ward.  Trooper Ward, in turn, draws from his own knowledge

5

and information provided by a confidential informant.[4]  (See Doc 38-3 at 4).  The informant describes Melvin as "traveling from New York back to Greencastle, Pennsylvania with large a large amount of CDS cocaine."  (See id.)  Melvin, according to the informant, is in possession of a "black-taped brick" for which he paid $43,000 and intends to "turn for a quick sale and profits" to "payoff prior debits."  (See id.)  Trooper Ward attests Melvin is the subject of an ongoing investigation into local drug trafficking and generally known to be a supplier of cocaine in the Hagerstown, Maryland, area.  (See id.)  A "common- sense" reading of these averments is more than sufficient to support the inference that Melvin is a drug dealer.  See Stearn, 597 F.3d at 559; Burton, 288 F.3d at 104.  According to the affidavit, Melvin had purchased a controlled substance, was then in possession of the controlled substance with the intention of selling it, and was generally in the business of selling controlled substances.

The supporting affidavit also connects Melvin to 14661 Sherwood Drive.  The affidavit describes Melvin's permanent residence in New York, but it also references Melvin's weekend visits to an alternative, albeit temporary, residence at 14661 Sherwood Drive.  (See Doc 38-3 at 3-4); see also Burton, 288 F.3d at 104.  Indeed, the parties concede that Melvin had an expectation of privacy at the Sherwood Drive residence.  (See Doc. 40-1 at 3-4; Doc. 41 at 2).  Moreover, the

---

[4] The ultimate source of each factual averment reported by Trooper Fluck is not always clear.  The court assumes information specifically reported as coming from the confidential informant, of course, comes from the informant.  All other information we assume comes from Trooper Ward, the purported intermediary between Trooper Fluck and the informant.

informant specifically identifies Melvin's storage of drugs in the kitchen of 14661 Sherwood Drive, (see Doc 38-3 at 4); the informant's portrayal of Melvin's stash location establishes Melvin's "ingress and egress" into the residence and suggests he "had some degree of dominion over the property," see Stearn, 597 F.3d at 557.

Lastly, the affidavit clearly connects the cocaine brick in the Sherwood Drive kitchen to Melvin's drug dealing activities. As noted above, the informant describes the appearance of the "brick" in detail, portrays Melvin as announcing his intent to sell the "brick" to pay of existing debt, and places the contraband squarely within Melvin's control in the residence's kitchen. (See Doc. 38-3 at 4). The averments in the affidavit clearly evince that the contraband at 14661 Sherwood Drive is an instrument of Melvin's drug dealing.

The court finds the information proffered in the affidavit is sufficient to show there was a "fair probability that contraband would be found at [the residence]." See Burton, 288 F.3d at 103, 105 (citing Gates, 462 U.S. at 238). Hence, a neutral magistrate could reasonably determine that probable cause existed to search 14661 Sherwood Drive for contraband related to Melvin's drug dealing. See Stearn, 597 F.3d at 558-59.

### B. Credibility

Melvin also attacks the credibility of the informant whose purported first-hand knowledge underlies most of the factual averments in the affidavit connecting Melvin to 14661 Sherwood Drive. (See Doc. 39 at 10-11). Statements by informants, unlike statements by law enforcement officers, are "not presumed to be credible." See United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006). Accordingly, the

7

magistrate must examine the "totality of the circumstances" to determine whether an affidavit "gives rise to probable cause." Stearn, 597 F.3d at 555. This analysis may rely upon any indicia of reliability, including the veracity of the informant's statements, the basis of the informant's knowledge, and corroborating police investigation, to find the existence of probable cause. See id. (citing Gates, 462 U.S. at 230, 233, 241).

The "creditable [sic] and reliable" informant in the affidavit is someone close to Melvin. (See Doc. 38-3 at 4). First and foremost, Melvin trusts the individual enough that he showed the informant the contraband "brick," explained to the informant his plan for selling it, and travelled with the informant while transporting it to Greencastle. (See id.) The informant's firsthand knowledge is underscored by his or her detailed description of the packaging of the "brick" The informant is also sufficiently acquainted with Melvin that he or she is privy to the exact location of the "brick" in the kitchen of the informant's residence. (See id.) The affidavit reflects a clear sense of the informant's closeness to Melvin by the informant's intimate familiarity with the location of Melvin's drug stash, movements, and drug business activities. The informant's account is corroborated by Trooper Ward who asserts Melvin is a known source of drugs, particularly cocaine, in the Hagerstown, Maryland, area—a region that encompasses Greencastle. (See id.) Melvin argues that the affidavit's failure to record any controlled drug buys is fatal to probable cause, but such buys are not necessary prerequisites.. See Stearn, 597 F.3d at 555.

A magistrate could fairly conclude that an informant intimately familiar with the target's drug-dealing operation—who is able to describe the packaging of the

8

contraband, has control of the location where the contraband is stored, and whose assertions are corroborated by law enforcement's investigatory knowledge of the target's activities—is credible and reliable. See Stearn, 597 F.3d at 555. Guided by information provided by a credible and reliable informant, the magistrate possessed a "substantial basis for . . . concluding that probable cause existed." See Miknevich, 638 F.3d at 182 (alteration in original) (quoting Gates, 462 U.S. at 238-39).

### C.   Good-Faith Exception

Even assuming, *arguendo*, that the warrant lacked sufficient probable cause, the good-faith exception to the exclusionary rule would apply. Courts will not suppress evidence obtained through a subsequently invalidated search warrant if officers acted in good faith, that is, "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." United States v. Leon, 468 U.S. 897, 918 (1984); see Stearn, 597 F.3d at 560 (quoting Leon, 468 U.S. at 918). The test is "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (quoting United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting Leon, 468 U.S. at 922 n.23)). Our court of appeals has recognized four "rare" exceptions to this rule, only one of which is relevant here: evidence will be suppressed if "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

See United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012) (quoting Stearn, 597 F.3d at 561 & n.19 (internal quotation marks and citations omitted)).

Trooper Fluck's affidavit provides more than sufficient information for a reasonable law enforcement officer to believe it was supported by probable cause. The affidavit connected Melvin to drug dealing, provided the address of the residence to be searched, outlined Melvin's connection to the residence, and specified the location where Melvin's drugs could be found.  (See Doc. 38-3 at 4). The affidavit's key assertion—that Melvin was dealing drugs out of 14661 Sherwood Drive—was supported by information from Fluck, Ward, and the informant.

The circumstances surrounding the warrant also lean strongly against deploying the drastic sanction of exclusion.  The Supreme Court has explained that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." Davis v. United States, 564 U.S. 229, 238 (2011) (quoting Herring v. United States, 555 U.S. 135, 143 (2009)).  Exclusion "is appropriate only where law enforcement conduct is both 'sufficiently deliberate' that deterrence is effective and 'sufficiently culpable' that deterrence outweighs the costs of suppression." United States v. Katzin, 769 F.3d 163, 171 (3d Cir. 2014) (quoting Herring, 555 U.S. at 1440).  As a general rule, only when law enforcement officers "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights" will the deterrent value of exclusion "tend[] to outweigh the

resulting costs." Davis, 564 U.S. at 238 (quoting Herring, 555 U.S. at 144) (internal quotation marks omitted).

Whatever the flaws of Trooper Fluck's warrant, there is no indication Trooper Fluck, Trooper Ward, or any other law enforcement officer involved with the warrant in question engaged in any form of deliberate, reckless, or grossly negligent conduct that violated Melvin's Fourth Amendment rights. The facts set forth in the affidavit and judicial approval of the search warrant more than adequately supported law enforcement's belief that they were acting within the law while executing the warrant. Hodge, 246 F.3d at 307–08 ("The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.") (citing Leon, 468 U.S. at 922). Under these circumstances, "exclusion cannot 'pay its way.'" Davis, 564 U.S. at 238 (quoting Leon, 468 U.S. at 907 n.6). We therefore hold, in the alternative, that the good-faith exception to the exclusionary rule applies to the search warrant for 14461 Sherwood Drive.

**IV.   Conclusion**

We will deny Melvin's motion to suppress evidence as he has failed to show the warrant executed at 14661 Sherwood Drive violated his rights under the Fourth Amendment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    March 9, 2022